1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         CENTRAL DISTRICT OF CALIFORNIA

10   MELANIE ZIMMERMAN,              )        NO. ED CV 05-537-PJW
                                     )
11                  Plaintiff,       )
                                     )        MEMORANDUM OPINION AND ORDER
12          v.                       )
                                     )
13   JO ANNE B. BARNHART,            )
     Commissioner of the Social      )
14   Security Administration,        )
                                     )
15                  Defendant.       )
     _____)

16

17                                    I.

18                               INTRODUCTION

19         Plaintiff brings this action seeking reversal of the decision by

20   Defendant Social Security Administration ("the Agency") denying her

21   application for Supplemental Security Disability Insurance Benefits

22   ("DIB").  Alternatively, she asks the Court to remand the case to the

23   Agency for further proceedings.  For the reasons discussed below, the

24   decision of the Agency is REVERSED, and the action is REMANDED for

25   further proceedings consistent with this opinion.

26

27

28

II.

FACTS

A.   Plaintiff's Personal History and Work History

Plaintiff was born on January 6, 1960, and was 45 years old when she testified at the hearing held in connection with the April 29, 2005 decision from which she appeals. (Administrative Record ("AR") 300, 545.) She graduated from high school in 1978 and has no further formal education. (AR 471.) Plaintiff last worked as a merchandiser for an apparel company from 1986 until August 1996. (AR 310-11, 472.) She had previously worked as a customer service representative and a receptionist. (AR 311.) Plaintiff contends that she became unable to work on August 12, 1996, and has not worked since that date. (AR 310, 472.)

B.   Plaintiff's Medical Condition and Treatment

Beginning in August 1996, Plaintiff sought medical treatment for several symptoms, including wrist, knee, and elbow pain. (AR 126-28.) She was initially diagnosed with carpal tunnel syndrome in both wrists, de Quervain's tendinitis in the right wrist, internal derangement of the right knee with a possible tear of the lateral meniscus, and subluxation of the right patella. (AR 132.) Plaintiff had also previously been diagnosed with a thyroid condition, which was controlled with thyroxine. (AR 129.)

Over the course of the several years between the date on which she allegedly became disabled and the date last insured, Plaintiff's subjective complaints became more severe, and new medical conditions arose. Plaintiff underwent arthroscopy to repair meniscal tears on both knees and carpal tunnel release on the right wrist. (AR 136-40, 159-52.) In December 2000, Plaintiff was diagnosed with hypertension

2

1   and was prescribed an exercise regimen.  (AR 198-201.)  Plaintiff

2   began to complain of lower back pain in June 2001, and was diagnosed

3   in 2002 first with lumbosacral spine strain, and later with

4   degenerative disc disease of the lumbar spine.  (AR 377, 416, 458-59.)

5   In June 2002, Plaintiff sought treatment for the first time ever for

6   asthma that she alleges that she has had "all her life," and obtained

7   prescription medication to control her asthma.  (AR 430-45, 488-90.)

8        Over the course of treatment for her various medical conditions

9   and symptoms, Plaintiff was prescribed and took a variety of

10  medications, including naproxen (for pain and inflammation),

11  Vicoprofen (for pain), cyclobenzaprine (muscle relaxer), oxaprozin

12  (for pain and inflammation), Ultram (for pain), famotidine (for

13  heartburn), Allegra (for allergy relief), Prinivil (for hypertension),

14  Levothroid (for hypothyroidism), Flonase (for allergy relief),

15  albuterol (for asthma/shortness of breath), and Wellbutrin (for

16  stress).  (AR 360.)

17  C.   Administrative Background

18       1.   Prior Proceedings

19       Plaintiff filed an application for DIB on January 8, 2001.  (AR

20  64-66.)  That application was denied on April 23, 2001 and again on

21  reconsideration on May 31, 2001.  (AR 46-49, 54-57.)  Thereafter,

22  Plaintiff requested a hearing before an administrative law judge,

23  however, the request was not timely and the application was dismissed

24  on October 22, 2001.  (AR 273.)

25       Plaintiff filed a second application on November 15, 2001.  (AR

26  292-294.)  The second application was also denied initially and on

27  reconsideration.  (AR 274-77, 280-83.)  Plaintiff requested a hearing

28  before an administrative law judge ("ALJ"), which request was granted.

1    (AR 468.)  On April 9, 2003, the ALJ held a hearing in which

2    Plaintiff, a non-examining consulting physician, Joseph Jensen, M.D.,

3    and a vocational expert, Roxanne Minkus, testified.  (AR 468-90.)

4         Plaintiff testified that she suffered pain in her knees, elbows,

5    wrists, and back.  (AR 485.)  She complained that her elbows "lock[]

6    up," and that her hands were numb.  (AR 485.)  She testified that she

7    had problems writing and grabbing things due to pain in her hands.

8    (AR 485.)  She also testified that she had trouble walking, and would

9    lose her balance due to aches and pains in her knees.  (AR 485.)  She

10   stated that she held onto objects for support when walking, but did

11   not use a cane or walker because she was "in denial that she need[ed]

12   one."  (AR 486.)  She further testified that she had trouble sitting

13   because of "severe arthritis in my back and bone spurs and other

14   medical items . . . and it gets locked up."  (AR 486-87.)  She also

15   complained of sciatic pain and sharp pains in the groin.  (AR 487.)

16   Plaintiff testified that she needs assistance lifting and carrying

17   groceries, and that she no longer engages in the physical activities

18   she used to.  (AR 487-88.)  Plaintiff also testified about the

19   worsening of her asthma symptoms, and about having sought treatment,

20   including prescription medication, to control her asthma symptoms.

21   (AR 488-90.)

22        Medical expert Dr. Jensen testified that Plaintiff was capable of

23   lifting up to a maximum of 20 pounds occasionally and 10 pounds

24   frequently; standing/walking six hours in an eight-hour day; and

25   sitting six hours with normal breaks.  (AR 474.)  Dr. Jensen believed

26   that Plaintiff should be subject to additional limitations, including

27   above-waist limitations to push-pull activity; no continuous or

28   repetitious activity; only occasional pedal use with the right lower

4

leg; occasional climbing of stairs and ramps; no climbing of ropes, ladders, or scaffolding; occasional balancing, stooping, kneeling, squatting, and crawling; no walking on uneven surfaces; and avoidance of concentrated exposure to high humidity, cold, heat, fumes, dust, odors, gases, solvents, and chemicals.  (AR 474.)  He did not recommend any limitation on gross or fine manipulation.  (AR 474.) Dr. Jensen believed that these limitations and impairments had been in existence since her alleged onset date, continuing through the time of the hearing.  (AR 475.)

Vocational expert Roxane Minkus testified that Plaintiff's prior employment would be classified as "sales rep, women's apparel and accessories," identified in the Dictionary of Occupational Titles ("DOT") as 261.357-066, specific vocational preparation level 3.  (AR 481.)  While the job is classified as "light," the vocational expert testified that Plaintiff had performed the job at a "medium" level. (*Id.*)  The vocational expert testified that Plaintiff could not perform her former job based upon the residual functional capacity as testified to by Dr. Jensen.  (AR 481-82.)  The vocational expert identified three occupations available in the local and national economies, however, that were suitable for a person with Plaintiff's residual functional capacity.  (AR 482-83.)  Upon examination by Plaintiff's counsel, the vocational expert testified that, if Plaintiff hypothetically required "one to two breaks every [h]our or every two hours" for "sometimes half-an-hour, sometimes all day" due to asthma attacks, or if she had to miss work more than three times a month, she could not work in the competitive labor market.  (AR 483.)

On May 22, 2003, the ALJ issued a decision, finding that Plaintiff had the residual functional capacity to perform light work,

that there were a significant number of jobs in the national economy that she could perform, and that she was not "disabled" at any time through the date of the decision.  (AR 28-29.)  Plaintiff requested review of the ALJ's decision, but the Appeals Council denied her request.  (AR 8.)  Thereafter, on March 26, 2004, Plaintiff filed an action in this Court seeking to overturn the ALJ's decision.   In September 2004, pursuant to the parties' stipulation, the Court remanded the case to the Agency to:

     1.   Re-evaluate the medical evidence of record, including the findings of plaintiff's treating physician;

     2.   Re-evaluate the credibility of plaintiff's subjective complaints within the guidelines of SSR 96-7p and relevant Ninth Circuit precedent;

     3.   Obtain vocational expert testimony regarding plaintiff's ability to work in the national economy;

     4.   Address plaintiff's residual functional capacity prior to her date last insured; and

     5.   Issue a new decision.

(AR 513-15.)

Following remand, on October 26, 2004, the Appeals Council issued an order remanding Plaintiff's case to an ALJ for two stated reasons:

-   The hearing decision [did] not contain an adequate evaluation of all the treating, examining, and nonexamining source opinions in the record[; and]

-   The credibility evaluation in the decision [was] not adequate in accordance with the guidelines of Social Security Ruling 96-7p and Dodrill v. Shalala.

(AR 520.)

The Appeals Council instructed the ALJ on remand to:

- Give consideration to the treating and examining source opinions pursuant to the provisions of 20 CFR 404.1527 and Social Security Rulings 96-2p and 96-5p and nonexamining source opinions pursuant to the provisions of 20 CFR 404.1527(f) and Social Security Ruling 96-6p, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating and examining source to provide additional evidence and/or further clarification of the opinions and medical source statement about what the claimant could still do despite the impairments through December 31, 2001 (20 CFR 404.1512).  The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating source.

- Further evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 CFR 404.1529) and pertinent circuit case law and Social Security Ruling 96-7p.

- Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14).  The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole.  The Administrative Law Judge

7

1    will ask the vocational expert to identify examples of
2    appropriate jobs and state the incidence of such jobs
3    in the national economy (20 CFR 404.1566).  Further,
4    before relying on the vocational expert evidence the
5    Administrative Law Judge will identify and resolve any
6    conflicts between the occupational evidence provided by
7    the vocational expert and information in the Dictionary
8    of Occupational Titles (DOT) and its companion
9    publication, the Selected Characteristics of
10   Occupations (Social Security Ruling 00-4p).
11 (AR 520-21.)

12      On February 3, 2005, a hearing was held before a new ALJ.  At
13 that hearing, Plaintiff and medical expert Dr. Jensen again testified,
14 along with vocational expert Gloria Lasoff.  (AR 545.)  Dr. Jensen
15 again described Plaintiff's medical conditions based upon his review
16 of the medical records, noting that Plaintiff had several
17 musculoskeletal problems, including arthroscopic procedures on her
18 knees, bilateral carpal tunnel syndrome, de Quervain's tendinitis on
19 her right wrist, a musculoligamentous sprain and degenerative facet
20 joint disease of the lumbar spine, and subjective complaints of elbow
21 pain and "locking."  (AR 551-52.)  Dr. Jensen also discussed the fact
22 that Plaintiff was a smoker, and that her smoking could have some
23 effect on her medical condition.  (AR 552-53.)

24      The ALJ then questioned Dr. Jensen regarding his prior testimony,
25 asking him whether he still agreed with the opinions he had given
26 about Plaintiff's residual functional capacity in his testimony before
27 the prior ALJ.  (AR 553-56.)  Dr. Jensen revised his original opinion
28 that Plaintiff's condition required no limitation on fine or gross

8

1   manipulation, stating that Plaintiff should not engage in strenuous

2   torquing or forceful gripping.  (AR 554-555.)  Dr. Jensen additionally

3   testified that Plaintiff could engage in "typing-type" activities for

4   periods of no longer than twenty minutes at a time with an opportunity

5   to rest for at least ten minutes.  (AR 556.)  With respect to

6   Plaintiff's subjective complaints of elbow pain and stiffness, Dr.

7   Jensen testified that Plaintiff should be limited to occasional

8   "extreme" ranges of elbow motion, but that she should be able to reach

9   "within the work range on a desk."  (AR 557-58.)  Dr. Jensen further

10  testified that Plaintiff's multiple medications, in combination,

11  "could contribute to a lack of concentration and could produce

12  drowsiness," depending on the dosage and frequency in which they were

13  taken.  (AR 558-59.)

14       Vocational expert Gloria Lasoff testified that Plaintiff's past

15  work as a merchandiser would be categorized as light and semi-skilled.

16  (AR 561.)  Based upon Dr. Jensen's testimony regarding Plaintiff's

17  residual functional capacity, Ms. Lasoff testified that Plaintiff

18  could still perform her past work.  (AR 563.)  As at the first

19  hearing, Plaintiff's counsel asked the vocational expert hypothetical

20  questions based upon Plaintiff needing to take unscheduled breaks

21  amounting to ten percent of the time.  Ms. Lasoff testified that the

22  type of work Plaintiff used to do might be flexible enough to allow

23  for such breaks, but that the amount of time off task could become

24  excessive and intolerable to an employer.  (AR 571-72.)  With respect

25  to alternative jobs Plaintiff could do, Ms. Lasoff testified that

26  Plaintiff could perform the duties of surveillance system monitor,

27  office helper, and information clerk, all of which are sedentary jobs

28  and are available in the local and national economies.  (AR 574-76.)

1    The ALJ briefly questioned Plaintiff regarding vocational

2  rehabilitation in which she had participated.  Plaintiff testified

3  that she had completed a course in computer graphics in which she had

4  been trained on equipment that would accommodate her medical

5  conditions.  (AR 572-73.)

6    On April 29, 2005, the ALJ issued a decision, denying Plaintiff's

7  claim for benefits.  Following the five-step sequential evaluation

8  process mandated by the Social Security regulations, at step one, he

9  found that Plaintiff had not engaged in substantial gainful activity

10 since the alleged onset date.  (AR 498.)  At step two, he concluded

11 that Plaintiff had the following severe impairments: asthma, allergic

12 rhinitis, hypertension, degenerative disc disease of the lumbar spine,

13 and status post knee surgery.  (AR 499.)  At step three, he concluded

14 that Plaintiff's impairments did not meet or equal any of the

15 Listings.  (AR 499.)  At step four, in contrast to the prior ALJ's

16 decision, the ALJ found that Plaintiff could perform her past relevant

17 work as a merchandiser.  (AR 501.)  Notwithstanding this conclusion,

18 the ALJ went on to step five, and determined, based on the testimony

19 of the vocational expert, that there were other jobs existing in

20 significant numbers in the national economy which Plaintiff could also

21 perform and, therefore, Plaintiff was not disabled.  (AR 502.)

22 Thereafter, Plaintiff filed suit in this Court seeking review of the

23 second ALJ's decision.

24                               III.

25                             ANALYSIS

26 A.   Standard of Review

27    "Disability" under Agency regulations is defined as the inability

28 to perform any substantial gainful activity due to any "medically

1   determinable physical or mental impairment which can be expected to
2   result in death or which has lasted or can be expected to last for a
3   continuous period of not less than 12 months." *See* 42 U.S.C.
4   § 423(d)(1)(A).  The Court may overturn the ALJ's decision that a
5   claimant is not disabled only if the decision is not supported by
6   substantial evidence or if the decision is based on legal error.
7   *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)(quoting *Green*
8   *v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)).  "Substantial
9   evidence" is such "relevant evidence as a reasonable mind might accept
10  as adequate to support a conclusion."  *Magallanes*, 881 F.2d at 750.
11  It is "more than a mere scintilla but less than a preponderance."
12  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).  This Court must
13  uphold the ALJ's conclusion even if the evidence in the record "is
14  susceptible to more than one rational interpretation."  *Andrews v.*
15  *Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

16  B.   Discussion

17       In this appeal, Plaintiff claims that the ALJ did not properly
18  consider:  (1) all of the medical evidence in the record; (2)
19  Plaintiff's subjective complaints of pain and properly assess
20  Plaintiff's credibility; and (3) the vocational expert testimony.
21  (Joint Stipulation at 5.)  For the reasons set forth below, the Court
22  agrees with Plaintiff and concludes that remand is required to address
23  these issues.

24       1.   The ALJ Failed to Properly Evaluate The Medical Evidence

25       Plaintiff contends that the ALJ failed to properly consider the
26  multiple medical opinions in the record with respect to Plaintiff's
27  upper arm limitations.  She complains that, in doing so, the ALJ
28  failed to comply with the Court's remand order and Appeals Council's

11

1   subsequent order.  Additionally, Plaintiff contends that the ALJ

2   improperly discredited or refused to accept the opinion of Plaintiff's

3   treating physician.  For the following reasons, the Court agrees.

4        Despite the orders of this Court and the Appeals Council

5   requiring re-evaluation of the medical evidence of record, the ALJ's

6   decision contains only a superficial analysis of Plaintiff's

7   substantial medical records from her treating physician, Dr. Ralph

8   Steiger.  In particular, the second ALJ, like the first, failed to

9   address Dr. Steiger's records dating from the initial onset of

10  Plaintiff's conditions in 1996 until the time she filed her first

11  application for DIB benefits in January 2001.[1]  With the exception of

12  a few months with respect to which the record is silent, from October

13  1996 until January 2001, Plaintiff was deemed "temporarily totally

14  disabled" by her treating physician.  She was instructed by him not to

15  work, due to her medical conditions and the pain her conditions and

16  her treatments caused.[2]

17

18

19

20      [1]  The Court notes that the second ALJ incorporated by reference
    the prior ALJ's decision and purported only to "supplement" that
21  decision.  (AR 499.)  The order by this Court and the order of the
    Appeals Council, however, made clear that the ALJ was to re-evaluate
22  the evidence in the record.  For the second ALJ to simply incorporate
    by reference the first ALJ's decision was erroneous inasmuch as even
23  the Appeals Council found that the first ALJ's decision was
    significantly inadequate.
24

25      [2]  California worker's compensation forms completed by Dr.
    Steiger for the vast majority of this period reflect that he issued
26  periodic instructions to Plaintiff to not work for the following two
    months.  With the exception of a few short periods as to which there
27  are no such forms in the record, these instructions cover the entire
    period from October 1998 through March 2001.  (AR 121-22, 141-48, 159-
28  64, 189-95, 225-28.)

1    While the ALJ was correct in stating that the treating
2  physician's opinion that Plaintiff was "temporarily totally disabled"
3  in the California workers' compensation context is not binding on the
4  Agency, his decision is devoid of any analysis as to why Plaintiff was
5  not disabled within the meaning of the Social Security Act during this
6  period based upon Dr. Steiger's examinations and diagnoses.   The
7  record is clear that, during the insured period, Plaintiff was
8  regularly advised by her doctor not to work.   Dr. Steiger also opined
9  that Plaintiff would not be able to return to her prior occupation.
10 (AR 170-71.)   There is no evidence in the record from any consulting
11 physician, however, to refute Dr. Steiger's opinion that Plaintiff was
12 disabled and should not have returned to work from 1996 onward.

13    In general, a treating physician's opinion as to the nature and
14 severity of an impairment will be given controlling weight if it is
15 well-supported by objective medical evidence and is not inconsistent
16 with the other substantial evidence in the record.   20 C.F.R.
17 § 416.927(d)(2).   Where the treating physician's opinion is
18 contradicted by the opinion of a non-treating physician, the ALJ may
19 disregard the treating physician's opinion provided that the ALJ makes
20 findings setting forth specific, legitimate reasons for doing so that
21 are based on substantial evidence in the record.   *Magallanes*, 881 F.2d
22 at 751.

23    Neither ALJ discredited Dr. Steiger's opinions.   And nowhere in
24 either decision does either ALJ conclude that Dr. Steiger's opinion
25 was not well-supported by objective medical evidence.   Rather, both
26 ALJs accepted Dr. Steiger's evaluations as objective evidence of
27
28

Plaintiff's medical conditions, but then deferred to non-treating consulting physicians to establish Plaintiff's residual functional capacity.  (AR 24-27, 499-501.)

As consulting medical expert Dr. Jensen did not directly contradict the opinions of Dr. Steiger, it is difficult to determine the extent to which their opinions are in conflict.  Inasmuch as Dr. Jensen testified that Plaintiff was capable of working in 1996 and at the time of the hearing, while Dr. Steiger had concluded that Plaintiff could not work from 1996 to 2001, their opinions were inherently in conflict.  Additionally, the opinion of the vocational expert that Plaintiff could return to her former occupation was in conflict with Plaintiff's treating physician's opinion that she could not.  (AR 170-71, 563.)  Yet both ALJs chose to accept the opinions of the non-examining consultants.

Before reaching the decision to defer to Dr. Jensen's opinion with respect to the Plaintiff's residual functional capacity, the ALJ was, at a minimum, required to "make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Magallanes*, 881 F.2d at 751 (quoting *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)).  "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'"  *Id.* (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408

14

1   (9th Cir. 1986)).  Neither ALJ decision in this matter undertook any

2   such effort, and on that basis alone, the decision from which

3   Plaintiff appeals is plainly deficient.[3]

4       While the record in this case includes several medical opinions

5   and reports by Plaintiff's treating physician as well as numerous

6   examining and non-examining consulting physicians, neither ALJ

7   undertook any analysis of this evidence, or explained how any of the

8   opinions that the Plaintiff was not disabled could be reconciled with

9   the conflicting opinion of Plaintiff's treating physician that she

10  was.  This Court does not consider whether, in light of these opinions

11  and records not discussed by the ALJ, the ALJ's conclusion may have

12  nonetheless been correct.  *See Connett v. Barnhart*, 340 F.3d 871, 874

13  (9th Cir. 2003)(noting that a reviewing court is "constrained to

14  review the reasons the ALJ asserts," and an ALJ's decision cannot be

15  affirmed on the basis of evidence he or she did not discuss); *Barbato*

16

17       [3]  The second ALJ's decision to "supplement" the first ALJ's
18  decision with evidence from a December 8, 2003 report by Dr. Steiger
    is curious.  (AR 499-500.)  The relevance of an evaluation based on an
19  examination nearly two years after the date last insured is
    unexplained.  Moreover, Dr. Steiger's 2003 evaluation appears to be in
20  conflict with the opinion of the consulting expert adopted by the
    second ALJ.  In that evaluation, Dr. Steiger recommended limitations
21  on Plaintiff's work activities, including no repetitive gripping,
    pushing, pulling, pinching, typing, writing or data input, no
22  prolonged walking or standing, and weight-bearing activities for no
    more than 50% of the work day.  (AR 542.)  Dr. Steiger also noted that
23  Plaintiff had lost 50% of her pre-injury capacity for manipulation
    with either hand.  (*Id.*)  On the other hand, the second ALJ adopted
24  Dr. Jensen's opinions and the first ALJ's conclusions that Plaintiff
    was capable of standing and/or walking for six hours in an eight-hour
25  day, with no limitations on manipulation, including grasping and fine
    fingering.  (AR 498-502, 562-63.)  As discussed herein, the ALJ may
26  not disregard the opinion of the treating physician in favor of the
    non-treating consultant without setting forth specific and legitimate
27  reasons for doing so.  *See Magallanes*, 881 F.2d at 751.
28

1    *v. Comm'r of Soc. Sec. Admin.*, 923 F. Supp. 1273, 1276 n.2 (C.D. Cal.
2    1996)(stating that remand is appropriate where ALJ fails to provide
3    adequate explanation of a decision, "even if [the Agency] can offer
4    proper post hoc explanations for such unexplained conclusions,"
5    because "the Commissioner's decision must stand or fall with the
6    reasons set forth in the ALJ's decision").

7         The second ALJ also failed to follow the Appeals Council's
8    instruction to address "what the claimant could still do despite the
9    impairments through December 31, 2001," and to develop the record as
10   necessary in making that determination.  (AR 520.)  Rather than
11   addressing Plaintiff's condition over the entire insured period, both
12   ALJs addressed Plaintiff's condition only at particular points in
13   time.  The first ALJ noted that Dr. Jensen testified regarding
14   Plaintiff's residual functional capacity as of the alleged onset date.
15   (AR 26.)  The second ALJ, on remand under the specific instruction to
16   re-evaluate Plaintiff's residual functional capacity prior to the date
17   last insured, stated only that "on or before December 31, 2001, the
18   claimant retained the residual functional capacity to perform a
19   narrowed range of light work."  (AR 499.)  The only medical evidence
20   and opinions specifically referenced by the second ALJ are a report by
21   Plaintiff's treating physician from approximately two years *after* her
22   date last insured, and the opinion of Dr. Jensen as to Plaintiff's
23   residual functional capacity, which appears to be relevant only to
24   Plaintiff's condition at the time of the hearing more than three years
25   after the date last insured.  On remand, the ALJ should re-evaluate
26   all of the medical evidence and specifically address whether Plaintiff
27   was "disabled" within the meaning of the Social Security Act at any
28   point during the time she was insured.

                                    16

1          2.    The ALJ Failed to Properly Consider Plaintiff's

2                Subjective Complaints

3      Plaintiff argues that the ALJ failed to properly consider her

4  subjective complaints and to assess her credibility as required by

5  Social Security Ruling ("SSR") 96-7p.[4]   She notes that the ALJ had

6  been specifically instructed by this Court and the Appeals Council to

7  reconsider Plaintiff's credibility with respect to her subjective

8  complaints.   (AR 514, 520.)   The Court agrees with Plaintiff and finds

9  that the ALJ failed to set forth a proper basis for finding that

10 Plaintiff's subjective complaints were not credible.   For this reason,

11 remand on this issue is warranted.

12     Pain or other symptoms of sufficient severity caused by

13 "medically diagnosed 'anatomical, physiological, or psychological

14 abnormality' may provide the basis for determining that a claimant is

15 disabled." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.

16 1997)(quoting 42 U.S.C. § 423(d)(5)(A), and citing *Bunnell v.*

17 *Sullivan*, 947 F.2d 341, 344-45 (9th Cir. 1991)(*en banc*)).   The Ninth

18 Circuit recognizes that the weight to give pain or other subjective

19 symptom testimony is a difficult determination to make because "pain

20 is a highly idiosyncratic phenomenon, varying according to the pain

21 threshold and stamina of the individual victim."   *Howard v. Heckler*,

22 782 F.2d 1484, 1488 (9th Cir. 1986).   To assist in analyzing the

23

24     [4]  SSR 96-7p provides that the ALJ's assessment of the
25 credibility of subjective pain statements must be based on a
   consideration of all of the evidence in the case record, which
26 includes, but is not limited to, medical signs and laboratory
   findings; diagnosis, prognosis, and other medical opinions; statements
27 and reports from the claimant and others; prior work record and
   efforts to work; daily activities; and observations about the
28 individual.

credibility of alleged symptoms, the Ninth Circuit has adopted a two-step analysis.  First, the ALJ must examine the evidence to determine whether the claimant has met her burden of producing objective medical evidence of an impairment, and of showing that the impairment reasonably could be expected to produce a symptom.  *See Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996).  Once a claimant produces objective evidence of an underlying impairment that is "reasonably likely" to cause some kind of symptom, the ALJ may not reject the claimant's subjective complaints regarding the extent and severity of her symptoms merely because the severity of those symptoms cannot be supported by objective medical evidence.  *See Bunnell*, 947 F.2d at 343.

Although a claimant must produce medical evidence of an underlying impairment reasonably likely to be the cause of her alleged symptoms, she is not required to submit medical findings to substantiate the severity of her symptoms.  *See Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992).  Rather, a claimant's testimony concerning the severity of her pain can only be rejected for specific, clear, and convincing reasons.  *See id.; see also Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)("For the ALJ to reject the claimant's complaints, [the ALJ] must provide specific, cogent reasons for the disbelief.")(internal quotation marks and citation omitted).

In evaluating a claimant's subjective testimony, the ALJ must consider "all of the evidence presented," including: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors, such as movement, activity, and environmental conditions; (4) the type, dosage, effectiveness and adverse side

18

effects of any pain medication; (5) treatment, other than medication, for relief of pain or other symptoms; (6) any other measures used by the claimant to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional restrictions due to such symptoms.   *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also* SSR 96-7p.   The ALJ also may employ "ordinary techniques of credibility evaluation," considering: (8) the claimant's reputation for truthfulness; (9) inconsistencies within the claimant's testimony, or between the claimant's testimony and the claimant's conduct; (10) a lack of candor by the claimant regarding matters other than the claimant's symptoms; (11) the claimant's work record; and (12) information from physicians, relatives, friends, or others concerning the nature, severity, and effect of the claimant's symptoms.   *See Light*, 119 F.3d at 792; *Fair v. Bowen*, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

With respect to the first *Smolen* step, the ALJ determined that Plaintiff "has a medically determinable impairment that could reasonably cause some pain and disfunction." (AR 501.)  However, rather than re-evaluating Plaintiff's credibility and curing the inadequacies of the first ALJ's determination that Plaintiff's complaints were not credible, the ALJ offered *even less* basis for his conclusion that the claimed severity of symptoms was out of line with objective medical evidence.  (AR 26-27, 501.)  The second ALJ, like the first, simply restated the content of Plaintiff's Daily Activity Questionnaire and her husband's Third Party Questionnaire.  Though the extent of claimant's daily activities is an appropriate consideration for the ALJ in determining credibility, the regulations do not require that a claimant be utterly incapacitated to obtain benefits.  *See Fair*

1   *v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  Rather, the activities

2   must be transferable to the workplace.  *Id*.  Nowhere in his decision

3   does the ALJ explain how Plaintiff's ability to perform limited

4   household chores on her schedule is transferable to the workplace.

5        After describing Plaintiff's complaints of constant and disabling

6   pain, broken sleep patterns, and substantially changed lifestyle, the

7   ALJ dismissed these complaints collectively as "not credible" with the

8   simple statement that "[t]he absence or near absence of hallmark

9   indications of pain such as reflex, sensory, and neurological deficits

10  is an indication that the complaints of pain are exaggerated."  (AR

11  501.)  This generalized and conclusory discrediting of Plaintiff's

12  credibility fails to meet the requirements of SSR 96-7p and Ninth

13  Circuit precedent.  The ALJ's reasons for discrediting Plaintiff's

14  complaints was neither specific nor convincing.  He did not identify

15  any particular statement that was not credible, nor did he provide any

16  connection between a specific complaint and his generalized conclusion

17  that there were no "hallmarks indications of pain."  For example, the

18  ALJ noted that Plaintiff complained of constant hand pain and that her

19  hands fell asleep during everyday activities, but he failed to explain

20  how such pain and numbness is not supported by objective medical

21  evidence.  To the contrary, earlier in his decision, the ALJ noted

22  that Plaintiff's treating physician described her as having "positive

23  Tinel's testing, both wrists; positive Phalen's testing, both wrists;

24  bilateral loss of grip strength; . . . pain with resisted wrist

25  dorsiflexion, bilaterally; [and] electrodiagnostic evidence of

26  moderate right and left residual carpal tunnel median neuropathy."

27  (AR 499-500.)  The Court finds it impossible to reconcile this

28

1  observation with the ALJ's conclusion that Plaintiff's subjective

2  complaints "are not reasonably supported by objective medical

3  evidence."  (AR 501.)

4      The ALJ noted that Plaintiff was able to sit for the entire

5  administrative hearing and "did not appear to be in discomfort . . .

6  ."  (AR 501.)  This is not a proper basis for analyzing a claimant's

7  credibility or her ability to work.  *See Perminter v. Heckler*, 765

8  F.2d 870, 872 (9th Cir. 1985)(criticizing ALJ's practice of evaluating

9  claimant's ability to work based on claimant's ability to sit through

10 administrative hearing as "sit and squirm" jurisprudence).

11     The ALJ's failure to provide specific, clear, and convincing

12 reasons for his conclusion that Plaintiff's complaints of a disabling

13 level of pain are "not credible" amounts to error.  Accordingly,

14 remand is required for a specific and thorough assessment of

15 Plaintiff's credibility with respect to her subjective complaints.

16 *See Bunnell*, 947 F.2d at 345-46 (holding that findings that a

17 claimants allegations of severity are not credible "must be

18 sufficiently specific to allow a reviewing court to conclude the

19 adjudicator rejected the claimant's testimony on permissible grounds

20 and did not 'arbitrarily discredit a claimant's testimony regarding

21 pain.'")(quoting *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1215

22 (11th Cir.1991)).

23     3.   On Remand, The ALJ Should Develop the Record as Necessary

24          With Respect to Residual Functional Capacity and

25          Availability of Occupations

26     Plaintiff contends that the ALJ's determination of Plaintiff's

27 residual functional capacity was deficient, and that, in turn, the

28 testimony of the vocational expert based upon that determination was

21

defective.   Given that the questions posed to the vocational expert by
the ALJ were based on the residual functional capacity as set forth by
the medical expert, Dr. Jensen, and in light of the Court's ruling
herein, the Court finds that, to the extent the ALJ's determination of
residual functional capacity may have been in error, the testimony of
the vocational expert is not probative of Plaintiff's ability to
perform other jobs existing in significant numbers in the national
economy.   As such, on remand, the ALJ should take another look at
Plaintiff's residual functional capacity and adjust any questions to
the vocational expert to account for any changes in the residual
functional capacity assessment.

IV.

CONCLUSION

For the reasons set forth above, the decision of the Agency
denying Plaintiff's claim for disability insurance benefits is
reversed and the case is remanded to the Agency for further
proceedings consistent with this Opinion.


IT IS SO ORDERED.


DATED:    December  14  , 2006.

_____
PATRICK J.  WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\ZIMMERMAN, M 537\Memo Opinion_Order.wpd